1

2

3

4                        UNITED STATES DISTRICT COURT

5                              DISTRICT OF NEVADA

                                      * * *
6                                        )
    ELAINE CUNNINGHAM-DIRKS, et al.,     )
7                                        )
              Plaintiffs,                )
8                                        )        2:12-CV-00590-PMP-VCF
    v.                                   )
9                                        )
    STATE OF NEVADA, et al.,             )        ORDER
10                                       )
              Defendants.                )
11  _____ )

12          Presently before the Court is Defendant Summerlin Hospital Medical Center,

13  LLC's ("Summerlin") Motion to Dismiss Plaintiffs' Amended Complaint (Doc. #8), filed

14  on August 2, 2012.[1]  Also before the Court is Defendant State of Nevada's Motion to

15  Dismiss (Doc. #14), filed on August 6, 2012.  Defendant American Medical Response, Inc.

16  ("American Medical") filed Joinders (Doc. ##12, 17) to Summerlin and State of Nevada's

17  Motions to Dismiss on August 3, 2012, and August 7, 2012.  Plaintiffs filed a consolidated

18  Opposition to both Motions to Dismiss (Doc. #19) on August 17, 2012, to which they

19  attached a proposed Second Amended Complaint.  State of Nevada filed a Reply (Doc. #20)

20  on August 24, 2012.  Summerlin filed a Reply (Doc. #21) on August 27, 2012.  On August

21  29, 2012, American Medical filed Joinders (Doc. ##22, 24) to the State of Nevada and

22  Summerlin's Replies.  On September 4, 2012, Plaintiffs filed a Surreply (Doc. #29).

23

24  _____

25          [1]  Defendant Summerlin Hospital Medical Center, LLC contends it incorrectly was named
    Valley Health Systems in Plaintiffs' Amended Complaint.  (Def. Summerlin Hosp. Med. Ctr., LLC's
26  Mot. to Dismiss (Doc. #8) at 1.)  Plaintiffs respond that they "are bringing this action against Valley
    Health Systems, by and through it's entities, Centennial Hills Hospital, Valley Hospital and Summerlin
    Hospital . . . [t]herefore, the correct entity was served."  (Mot. to Set Hearing in Opp'n of Dismissal
    (Doc. #19) at 5.)  For the purposes of this Order, the Court will refer to this defendant as "Summerlin."

Also before the Court is Plaintiffs' Motion for Leave to Amend the Complaint (Doc. #27), filed on September 4, 2012.  Summerlin filed an Opposition (Doc. #30) on September 12, 2012.  State of Nevada filed a Joinder to Summerlin's Opposition (Doc. #33) on September 18, 2012.  Plaintiffs filed a Reply (Doc. #36) on September 24, 2012.

Also before the Court is Plaintiffs' Motion to Challenge the Constitutionality of Nevada Revised Statutes (Doc. #42), filed on October 22, 2012.  Summerlin filed an Opposition (Doc. #48) on October 29, 2012.  State of Nevada filed an Opposition (Doc. #50) on October 31, 2012.  American Medical filed Joinders (Doc. ##49, 51) to the Oppositions on October 29, 2012, and October 31, 2012.   Plaintiffs filed Replies (Doc. ##54, 55) on November 8, 2012.

The Court held a hearing on these Motions on December 10, 2012.  (Mins. of Proceedings (Doc. #57).)  At the hearing, Plaintiffs presented a prepared statement which was filed on December 10, 2012.  (Mem. of Law in Support of Pls.' Mots. (Doc. #58).)

**I.      BACKGROUND**

This lawsuit arises out of the involuntary commitment of Plaintiff Dewey Dirks ("Dirks"), a mentally ill individual, to a medical facility.  Dirks and his wife, Elaine Cunningham-Dirks ("Cunningham-Dirks"), allege criminal violations, Health Insurance Portability and Accountability Act ("HIPAA") violations, constitutional and civil rights violations, state law claims for violation of over eighty Nevada statutes related to mental health and medical facilities as well as claims for false imprisonment, negligent infliction of emotional and physical distress, libel, slander, fraud, and negligence.  Plaintiffs allege claims against Summerlin, the State of Nevada, and American Medical.  In the Amended Complaint, Plaintiffs also reference Rawson-Neal Psychiatric Hospital ("Rawson-Neal"), Centennial Hills Hospital, and Valley Hospital, but these Defendants are not listed in the caption and have not been served.

/ / /

It is unclear whether this lawsuit involves one hospital stay or multiple stays. Plaintiffs allege Defendants' conduct took place "[a]t multiple times between April 12, 2010 and April 17, 2012." (Am. Compl. (Doc. #4) at 2.) Elsewhere in the Amended Complaint, Plaintiffs allege Defendants' conduct "result[ed] in the events of April 6, 2012." (Id. at ¶ 34.) It is also unclear which medical facility or facilities to which Dirks was transported and involuntarily committed, in part because the Amended Complaint refers to Defendants as a group and does not specify which Defendant's conduct underlies each of the claims. Finally, it is unclear exactly when Dirks was involuntarily committed to each of the facilities.

Plaintiffs allege that in response to a 311 call for "mental illness issues," Dirks was transported in an ambulance by two female paramedics, without Cunningham-Dirks in attendance, to a medical facility. (Am. Compl., ¶ 10.) Plaintiffs further allege Dirks was held against his will because Defendants wrongfully filed an application for emergency admission of Dirks to a medical facility under Nevada Revised Statutes § 433A.160, commonly known as a "Legal 2000" commitment. (Id. at ¶ 7.) Plaintiffs allege the application was wrongful because Dirks could not understand the implications of the application or other legal matters, because Defendants should have notified Cunningham-Dirks of the application on her husband's behalf, and because Dirks was not a danger to himself or others. (Id. at ¶¶ 8-9, 33.) Further, Plaintiffs allege Defendants ignored Plaintiffs' statements that they were "voluntarily seeking help." (Id. at ¶ 19.)

Plaintiffs allege Defendants "allowed, intimidated, and coerced" Dirks into answering questions, signing legal documents, and accepting treatment without proper disclosures even though Dirks was "a person clearly not of sound mind." (Id. at ¶¶ 11-12.) Plaintiffs allege Defendants denied Cunningham-Dirks access to her husband, violated her right to advocate for her husband, violated her rights specified in a power of attorney, failed to inform her of her husband's condition and treatment options, and inhibited her attempts

to obtain proper treatment for her husband.  (Id. at ¶¶ 13, 14, 16, 25, 28.)  Plaintiffs also allege Defendants failed to give them copies of documents as required under Nevada law and falsified documents "to facilitate hospital/ambulance company policy and staff convenience."  (Id. at ¶¶ 15, 17.)

Moreover, Plaintiffs allege Defendants made false claims regarding Dirks's medication compliance and committed libel and slander by accusing Dirks of inappropriate and criminal behavior and by claiming Dirks was dangerous.  (Id. at ¶¶ 20-22, 24.) Cunningham-Dirks also alleges she was slandered because Defendants stated she was unable to appropriately care for her husband.  (Id. at ¶ 23.)  Further, Plaintiffs allege Defendants violated HIPAA by knowingly making false statements to Plaintiffs and by withholding vital information from Plaintiffs.  (Id. at ¶¶ 26-27.)

Finally, Plaintiffs allege Defendants violated Dirks's constitutional right to be free from cruel and unusual punishment by "keeping an already frightened and paranoid man secluded from familiar people and surroundings the vast majority of the day jeopardizing any sense of security [Dirks] may have."  (Id. at ¶ 29.)  Plaintiffs further allege that Defendants violated Dirks's "due process right to adequate food, clothing, shelter, medical care and adequate mental health treatment," and that they violated his constitutional right to liberty by involuntarily committing him despite Cunningham-Dirks's willingness to care for him and the fact he was not dangerous to himself or others.  (Id. at ¶¶ 30, 33.) Plaintiffs also allege Defendants exposed Dirks to "inappropriately lengthy periods of mechanical restraints."  (Id. at ¶ 32.)  Finally, Plaintiffs allege Defendants eavesdropped and possibly recorded Plaintiffs' personal conversations in violation of their constitutional right to privacy.  (Id. at ¶ 18.)

Plaintiffs brought suit in this Court on April 11, 2012.  (Compl. (Doc. #1).) Before the Complaint was served, Plaintiffs filed an Amended Complaint including additional factual allegations on July 10, 2012.  (Am. Compl. (Doc. #4).)  Defendants

Summerlin, State of Nevada, and American Medical now move to dismiss all claims alleged against them in the Amended Complaint.

## II.        SUMMERLIN HOSPITAL'S MOTION TO DISMISS (Doc. #8)

Summerlin moves to dismiss, arguing the Court lacks subject matter jurisdiction because there is not a proper federal question presented.  Summerlin also argues that because Plaintiffs' federal claims fail, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.  If the Court exercises jurisdiction over the state law claims, Summerlin argues they fail as a matter of law.  Summerlin further argues that Plaintiffs' claims all center on allegedly improper medical care and that the Court should dismiss the Amended Complaint because Plaintiffs fail to attach a medical expert's supporting affidavit as required by Nevada Revised Statutes § 41A.071.  American Medical joins in Summerlin's Motion in its entirety.

Plaintiffs respond that Summerlin's rendition of the facts is inaccurate, and Plaintiffs attach a proposed Amended Complaint as well as a "correct statement of fact" to their Response.  (Pls.' Mot. to Set Hearing in Opp'n of Dismissal (Doc. #19) [Pls.' Opp'n"], Attach. 1, Ex. 4.)  Plaintiffs clarify that Dirks was not brought to the emergency room at Summerlin on a Legal 2000 admission by the police, but that Cunningham-Dirks asked a friend to call an ambulance to take Dirks to the emergency room to obtain a sedative, and that hospital staff subsequently filed a Legal 2000 application.  (Pls.' Opp'n, ¶ 2, Ex. 4; Pls.' Reply to Summerlin Hosp. (Doc. #29) at 4.)  Plaintiffs do not directly respond to Summerlin's argument that the Court lacks subject matter jurisdiction.  However, Plaintiffs argue the Court has jurisdiction to prevent future civil rights violations with respect to Nevada's mentally ill population by implementing a proposed ombudsman program, a copy of which Plaintiffs attached to their Response.  (Pls.' Opp'n, Ex. 2.)

/ / /

/ / /

### A.     18 U.S.C. §§ 241 and 242 Claims

Summerlin argues that Plaintiffs' claims under 18 U.S.C. §§ 241 and 242 must fail because they are criminal statutes that do not provide a private right of action. Summerlin further argues that because no private right of action exists, these statutes cannot provide a basis for Plaintiffs' 42 U.S.C. § 1983 claim.  Plaintiffs do not respond to these arguments.

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  Section 1983 does not create any substantive rights, but provides a method for enforcing rights contained in the Constitution or federal statutes.  Crowley v. Nev. ex. rel. Nev. Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012). To provide a basis for private enforcement under § 1983, a statute must "unambiguously confer[]" an individually enforceable right.  Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002).  "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."  Id. at 286.

Title 18 U.S.C. § 241 provides for the criminal prosecution of two or more persons conspiring to interfere with the constitutional or legal rights of another individual. Section 242 provides for criminal prosecution of a person who, acting under the color of state law, deprives another of his or her rights secured by the Constitution or federal statutes.  Although these statutes provide penalties ranging from fines to imprisonment, they do not provide individuals with a private right of action.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that §§ 241 and 242 "provide no basis for civil liability").

It is unclear whether Plaintiffs intend for § 1983 liability to be predicated on the violations of these criminal statutes or whether Plaintiffs intend for violation of §§ 241 and

242 to be stand alone claims.  Given that §§ 241 and 242 do not create individually

enforceable rights to prosecute violations of these statutes in civil cases, violations of

§§ 241 and 242 do not provide a cause of action under § 1983.  Further, there is no private

right of action under §§ 241 and 242, and thus Plaintiffs' stand alone claims under these

statutes, if any, fail as a matter of law.  The Court therefore will dismiss Plaintiffs' §§ 241

and 242 claims with prejudice.

**B.    HIPAA Claims**

Summerlin argues HIPAA does not provide a private right of action, thereby

requiring dismissal of this claim.  Summerlin further argues that because no private right of

action exists, HIPAA cannot provide a basis for Plaintiffs' § 1983 claim.  Plaintiffs respond

that although HIPAA does not provide a private right of action, "the misinterpretation of

HIPAA . . . does."  (Pls.' Opp'n, ¶ 5.)

HIPAA does not create an implied private right of action due to the availability of

monetary and criminal penalties to be assessed by the Secretary of Health and Human

Services or the State for HIPAA violations.  See 42 U.S.C. §§ 1320d-5, d-6; see also Seaton

v. Mayberg, 610 F.3d 530, 533 (9th Cir. 2010) (no private right of action under HIPAA);

Univ. of Colo. Hosp. Auth. v. Denver Publ'g Co., 340 F. Supp. 2d 1142, 1143-46 (D. Colo.

2004) (holding that HIPAA's statutory text and structure display no intent to create a

private right of action, and noting that HIPAA expressly provides enforcement mechanisms,

indicating Congress did not intend to allow an additional private remedy).  However,

"whether a statutory violation may be enforced through § 1983 is a different inquiry than

that involved in determining whether a private right of action can be implied from a

particular statute."  Gonzaga, 536 U.S. at 283 (quotation omitted).  Both inquiries have the

same first step, which requires "a determination as to whether or not Congress intended to

confer individual rights upon a class of beneficiaries."  Id. at 285.  The inquiries differ at the

second step.  For implied right of action cases, the underlying statute must create a remedy.

Id. at 284.  For § 1983 cases, the text of § 1983 creates the remedy.  Id.

In implied right of action cases, federal courts have held that HIPAA does not create a private right.  Acara v. Banks, 470 F.3d 569, 571-72 (5th Cir. 2006).  Rather than conferring privacy rights on a specific class of individuals, HIPAA "focuses on regulating persons that have access to individually identifiable medical information and who conduct certain electronic health care transactions."  Id. at 571.  "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons."  Gonzaga, 536 U.S. at 278 (quotation omitted).  Because HIPAA does not create a private right, it cannot be enforced via § 1983.

It is unclear whether Plaintiffs intend for § 1983 liability to be predicated on HIPAA violations or whether Plaintiffs intend for the HIPAA violations to be stand alone claims.  Given that HIPAA does not create a private right, it cannot be enforced via § 1983.  Further, because there is not an implied private right of action for HIPAA violations, Plaintiffs' stand alone claims under HIPAA, if any, fail as a matter of law.  The Court therefore will dismiss Plaintiffs' HIPAA claims with prejudice.

### C.   Constitutional § 1983 Claims

#### 1.   State Actor

In its Joinder to State of Nevada's Motion to Dismiss, American Medical argues it is not a state actor for § 1983 purposes.  (Def. Am. Med. Response's Joinder to Def. State of Nev.'s Mot. to Dismiss (Doc. #17) at 3.)  Summerlin also argues it is not a state actor, but Summerlin raises this argument for the first time in its Reply.  (Def. Summerlin Hosp. Med. Ctr., LLC's Reply in Support of Its Mot. to Dismiss (Doc. #21), at 3-4.)  Although the Court normally will not consider arguments raised for the first time on reply, the Court will resolve this issue because it goes to the Court's subject matter jurisdiction, which the Court has an independent obligation to examine.  United Investors Life Ins. Co. v. Waddell & Reed, Inc., 360 F.3d 960, 966-67 (9th Cir. 2004).

The Nevada Supreme Court has held that "Nevada statutory provisions allowing private persons to detain the mentally ill constitute a delegation of state power, and the restraint of individuals against their will under a statutory grant of power constitutes state action." Cummings v. Charter Hosp. of Las Vegas, Inc., 896 P.2d 1137, 1144-45 (Nev. 1995). Consequently, the hospital Defendants, such as Summerlin, are state actors for § 1983 purposes when exercising power under the emergency admission statute, Nevada Revised Statutes § 433A.160.

As for American Medical, the Amended Complaint contains no factual allegations that American Medical exercised any power under the emergency admission statute that would make it a state actor. The Amended Complaint merely alleges American Medical transported Dirks to the hospital. It is unclear from the Amended Complaint's allegations whether Dirks voluntarily took the ambulance ride and was involuntarily committed only after his arrival at the hospital. (See Am. Compl., ¶ 10 (alleging that an ambulance responded to a 311 call for mental illness).) The Court therefore will dismiss Plaintiffs' § 1983 constitutional claims as to American Medical only, with leave to amend to add factual allegations regarding why American Medical would be a state actor.

### 2.   Qualified Immunity

Summerlin moves to dismiss Plaintiffs' constitutional claims under § 1983 based on qualified immunity. In ruling on a qualified immunity defense, a court considers whether the facts alleged show the defendant's conduct violated a constitutional right. Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). If the plaintiff has shown a deprivation of a constitutional right, the court must determine whether that right was clearly established. Id. A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

Summerlin argues it is entitled to qualified immunity because Nevada law provides immunity to hospitals and ambulance personnel in involuntary commitment situations unless the plaintiff alleges bad faith, malice, or negligence causing bodily harm, citing Marshall v. Eighth Judicial District Court, 836 P.2d 47, 52 (Nev. 1992), in support. However, state law cannot immunize conduct which violates the federal Constitution. Wallis v. Spencer, 202 F.3d 1126, 1144 (9th Cir. 2000) ("Immunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations."). As this is Summerlin's only qualified immunity argument, the Court will deny Summerlin's Motion to Dismiss on this basis.

### 3. Constitutional Claims

Besides its arguments regarding whether it is a state actor and qualified immunity, Summerlin does not address the merits of Plaintiffs' constitutional claims in its Motion. Given that Plaintiffs' federal statutory claims fail as a matter of law, Plaintiffs' constitutional claims provide the only basis for federal subject matter jurisdiction. Because the Court has an independent obligation to examine its own jurisdiction, the Court will address each of Plaintiffs' constitutional claims.

### a. Fifth and Eighth Amendment Claims

Plaintiffs allege a Fifth Amendment violation related to Defendants' questioning of Dirks while he was mentally incapacitated, thus leading him to incriminate himself. However, a Fifth Amendment violation does not occur "unless and until allegedly coerced statements were used against the suspect in a criminal case." Stoot v. City of Everett, 582 F.3d 910, 923 (9th Cir. 2009). There is no allegation Dirks was subject to any criminal proceedings, and thus the Fifth Amendment does not apply. Plaintiffs also allege an Eighth Amendment violation, however, there is no allegation in the Amended Complaint that Dirks was convicted of a crime, and thus the Eighth Amendment does not apply. Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001). As such, the Court will dismiss

Plaintiffs' Fifth Amendment and Eighth Amendment claims with leave to amend to add factual allegations regarding criminal proceedings or convictions related to this case to which Dirks was subjected, if such facts exist.

**b.    Fourth Amendment Claim**

Plaintiffs allege a Fourth Amendment violation related to eavesdropping on Plaintiffs' personal conversations.  To the extent eavesdropping could be considered a Fourth Amendment search in this context, and assuming Summerlin was acting as a state actor when it allegedly eavesdropped, there are no factual allegations about when or where these personal conversations occurred, or any other facts which would support the legitimate expectation of privacy necessary to allege a Fourth Amendment search claim. See United States v. Nerber, 222 F.3d 597, 599 (9th Cir. 2000) (stating that to establish a legitimate expectation of privacy to support a Fourth Amendment claim, a plaintiff must show a subjective expectation of privacy, and that this expectation was "one that society is prepared to recognize as reasonable" (quotation omitted)).  Because the Amended Complaint has no factual allegations supporting this claim, the Court will dismiss Plaintiffs' Fourth Amendment claim with leave to amend to add factual allegations supporting a plausible entitlement to relief.

**c.    Fourteenth Amendment Claims**

Plaintiffs allege their Fourteenth Amendment due process rights were violated because the application for emergency admission under § 433A.160 was filed without notice to Plaintiffs and without an opportunity to respond.  It is unclear whether Plaintiffs are challenging Chapter 433A as a whole for failing to provide a mechanism to challenge continued involuntary commitment within the 72-hour emergency hold period, or whether Plaintiffs are alleging a failure to follow existing statutory requirements in their particular circumstances.  The Court therefore will dismiss this Fourteenth Amendment claim with leave to amend to clarify exactly what Plaintiffs are alleging regarding lack of notice.

Plaintiffs also allege a Fourteenth Amendment due process violation based on a deprivation of food, clothing, shelter, medical care, and adequate mental health treatment. There are no factual allegations that Dirks was deprived of any of these things during his various stays. However, Plaintiffs allege Dirks was subjected to unjustifiably long periods of mechanical restraints. That potentially is a viable due process liberty claim. Youngberg v. Romeo, 457 U.S. 307, 316 (1982) (holding that involuntarily committed individuals have liberty interests in being free from bodily restraint). However, there are no factual allegations as to which Defendant or Defendants placed Dirks in mechanical restraints or for how long each Defendant did so sufficient to support a plausible entitlement to relief. This Court therefore will dismiss this Fourteenth Amendment claim with leave to amend to add factual support and to ascribe conduct to particular Defendants.

Finally, Plaintiffs allege a Fourteenth Amendment claim for deprivation of liberty based on the factual allegation that Dirks was involuntarily committed even though he was not a danger to himself or others. "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979). Under Nevada Revised Statutes § 433A.160(1)(a), an emergency admission may be made without a warrant only if the authorized physician has "probable cause to believe that the person has a mental illness and, because of that illness, is likely to harm himself or herself or others if allowed his or her liberty." Taking Plaintiffs' allegations and all reasonable inferences therefrom as true that Dirks was not a danger to himself or others, Plaintiffs have stated a due process claim that Summerlin deprived Dirks of liberty by involuntarily committing him without probable cause to believe he was likely to harm himself or others if released.

To summarize, the Court will dismiss Plaintiffs' Fourteenth Amendment claims based on allegations of (1) violations of § 433A.160 and/or Chapter 433A, (2) deprivation of food, clothing, shelter, medical care, and adequate mental health treatment, and

(3) unjustifiably long periods of mechanical restraints, with leave to amend to add factual allegations sufficient to support a plausible entitlement to relief.  Plaintiffs' allegation that Dirks was deprived of his liberty even though he was not a danger to himself or others states a viable claim under the Fourteenth Amendment and therefore survives dismissal.

### D.   State Law Claims

Given that Plaintiffs stated a colorable claim for violation of Dirks's due process rights under the Fourteenth Amendment, the Court will exercise supplemental jurisdiction over Plaintiffs' state law claims.  Plaintiffs allege state law claims for false imprisonment, negligent infliction of emotional and physical distress, libel, slander, fraud, and negligence. Plaintiffs also allege Defendants violated over eighty Nevada statutes related to mental health and medical facilities including Nevada Revised Statutes §§ 449.710, 449.720, 449.730, 433.741 through 433.5503, and 433A.155 through 433A.580.

### 1.   False Imprisonment

Summerlin argues Plaintiffs' false imprisonment claim should be dismissed because Summerlin is immune from civil liability related to Dirks's involuntary commitment under § 433A.740, which provides qualified immunity to ambulance and hospital personnel who respond to calls involving mentally ill individuals and assist in detaining those individuals.  Summerlin further argues the immunity cannot be pierced because Plaintiffs do not allege malice, bad faith, or negligence causing bodily harm related to Dirks's involuntary commitment.  Plaintiffs do not respond to Summerlin's arguments.

To state a claim for false imprisonment, a plaintiff must allege (1) the defendant "intend[ed] to confine the other or a third person within boundaries fixed by the actor," (2) "his act directly or indirectly results in such a confinement of the other," and (3) the plaintiff "is conscious of the confinement or is harmed by it."  Hernandez v. City of Reno, 634 P.2d 668, 671 (Nev. 1981) (quotation omitted).  However, in the context of involuntary commitments under Chapter 433A, a defendant may be immune from civil liability for false

imprisonment and other claims if certain conditions are met.  Pursuant to § 433A.740,

> [a]ny public officer or employee who transports or delivers or assists in transporting or delivering or detains or assists in detaining any person pursuant to the provisions of this chapter shall not be rendered civilly or criminally liable thereby unless it is shown that such officer or employee acted maliciously or in bad faith or that his or her negligence resulted in bodily harm to such person.

Here, Plaintiffs have stated a claim for false imprisonment: they allege that Defendants intended to confine Dirks by filing the wrongful involuntary commitment petition even though Dirks was not a danger to himself or others, that Defendants' acts resulted in Dirks's confinement in the medical facility, and that Dirks was aware of the involuntary commitment.  However, under § 433A.740, Defendants are immune from civil liability for this claim because Plaintiffs do not allege Defendants acted with malice, bad faith, or that Dirks was physically harmed as a result of the involuntary commitment.  The Court therefore will dismiss Plaintiffs' false imprisonment claim with leave to amend to allege facts indicating Defendants acted with malice or bad faith or that Dirks suffered bodily harm as a result of Defendants' negligence, if such facts exist.

2.    Negligent Infliction of Emotional Distress ("NIED")

Summerlin argues Plaintiffs' claim for NIED should be dismissed because Dirks could not be a bystander to his own injuries and because Cunningham-Dirks does not allege she witnessed any of the events related to Dirks's involuntary commitment.  Rather, Plaintiffs allege Dirks was transported in an ambulance to a medical facility "without spouse in attendance."  (Am. Compl., ¶ 10.)  Plaintiffs do not respond to these arguments.

Given the scarcity of factual allegations in the Amended Complaint, it is unclear whether Plaintiffs are attempting to allege a direct claim of NIED with respect to Dirks or a bystander NIED claim with respect to Cunningham-Dirks.  To establish a direct claim of NIED, a plaintiff must show (1) the defendant acted negligently, (2) either a physical impact or, in the absence of a physical impact, proof of serious emotional distress causing

physical injury or illness, and (3) actual or proximate causation.  <u>Barmettler v. Reno Air, Inc.</u>, 956 P.2d 1382, 1387 (Nev. 1998).  An NIED claim under a bystander theory requires a bystander: (1) be closely related to the victim of an accident, (2) be located near the scene of the accident, and (3) suffer a shock resulting from direct emotional impact stemming from the sensory and contemporaneous observance of the accident.  <u>Crippens v. Save On Drug Stores</u>, 961 P.2d 761, 762 (Nev. 1998).

Here, Plaintiffs fail to plead the requisite elements of a direct NIED claim or a bystander NIED claim.  Because the Amended Complaint has no factual allegations supporting these claims, the Court will dismiss this claim with leave to amend to add factual allegations supporting a plausible entitlement to relief.

3.   <u>Libel and Slander</u>

Summerlin argues Plaintiffs' defamation claims should be dismissed because Plaintiffs provide only generalities about Defendants' statements.  Summerlin contends that without presenting the actual statements so they can be reviewed in context, it cannot adequately defend itself.  Summerlin also argues Plaintiffs do not include allegations concerning all of the elements of a defamation claim because they do not allege the statements were made in an unprivileged publication to a third party or that the statements resulted in damages.  Plaintiffs do not respond to these arguments.

"An action for defamation requires the plaintiff to prove four elements: (1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."  <u>Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.</u>, 213 P.3d 496, 503 (Nev. 2009) (quotation omitted).  Even liberally construing Plaintiffs' Amended Complaint, it is not sufficient to state a claim for defamation.  Plaintiffs allege Defendants defamed Cunningham-Dirks "with allegations of criminal intentions," "with allegations of inappropriate intentions and behavior," and "with allegations of inability to appropriately care for [Dirks]."  (Am.

Compl., ¶¶ 21-23.)  Plaintiffs allege Defendant defamed Dirks "with allegations of criminal behavior claiming he was dangerous, creating an unlawful detention."  (Id. at ¶ 24.)  Although Plaintiffs list generalities about the defamatory statements that were made, they do not identify who made the statements, what the actual statements were, and to whom they were made.  The Court therefore will dismiss Plaintiffs' libel and slander claims with leave to amend to allege clarifying facts and to ascribe particular conduct to particular Defendants.

4.  <u>Fraud</u>

Summerlin argues Plaintiffs' fraud claims should be dismissed because Plaintiffs do not plead fraud with the requisite specificity under Federal Rule of Civil Procedure 9.  Plaintiffs do not respond to Summerlin's argument.

To state a claim for fraud, a plaintiff must allege (1) the defendant made a false representation, (2) the defendant knew or believed the representation to be false, (3) the defendant intended to induce plaintiff to rely on the misrepresentation, and (4) the plaintiff suffered damages as a result of his or her reliance on the misrepresentation.  <u>Barmettler</u>, 956 P.2d at 1386.  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud."  Pleading fraud with particularity requires allegations regarding the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted).  Further, "the plaintiff must set forth what is false or misleading about a statement, and why it is false."  <u>Ebeid ex rel. U.S. v. Lungwitz</u>, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted).

Here, Plaintiffs allege Defendants "[f]alsified documents and omitted facts to facilitate hospital/ambulance company policy and staff convenience," "[m]ade false claims as to both plaintiff's [sic] medication compliance," "[k]nowingly made false and misleading statements to both plaintiffs, abusing HIPAA and Nev. Rev. Stat.," and "[w]ithheld vital

16

information to both plaintiffs, abusing HIPAA and Nev. Rev. Stat." (Am. Compl., ¶¶ 17, 20, 26, 27.) But the Amended Complaint lacks particular pleading with respect to the time, the place, the identity of the parties involved, and the nature of the fraud. Plaintiffs do not identify which Defendant allegedly committed the fraudulent acts. The Court therefore will dismiss Plaintiffs' fraud claim with leave to amend to add factual support, to set forth what is false or misleading about the statements, and to ascribe conduct to particular Defendants.

                            5.      Negligence

        The parties do not raise arguments regarding negligence. Construed liberally, however, Plaintiffs' Amended Complaint may allege a negligence claim because Plaintiffs state Defendants "[n]egligently discounted statements of and failed to inform [Cunningham-Dirks] of [Dirks's] condition and treatment options causing a prolonged condition in violation of ethics and the Nev. Rev. Stat." (Am. Compl., ¶ 25.) Elsewhere, Plaintiffs allege "Defendants did violate, through negligence . . . the rights of both plaintiff's [sic] in multiple statutes of the N.R.S. multiple times . . . ." (Id. at 2.)

        To prevail on a negligence claim, a plaintiff must show: "(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages." Doud v. Las Vegas Hilton Corp., 864 P.2d 796, 798 (Nev. 1993), superseded on other grounds by Nev. Rev. Stat. § 651.015. To the extent Plaintiffs intend to state a negligence claim, the claim fails because the Amended Complaint does not contain either direct or inferential factual allegations concerning all of the material elements necessary to support a negligence claim. To the extent Plaintiffs are attempting to disguise medical malpractice claims as negligence claims, such claims must fail because Plaintiffs have conceded their medical malpractice claims are time barred. (Pls.' Opp'n at 6.) The Court therefore will dismiss Plaintiffs' negligence claim with leave to amend to add factual support and to ascribe conduct to particular Defendants. However, Plaintiffs shall not re-assert medical malpractice claims

that are time barred.

6.   Violations of Nevada Revised Statutes

The parties do not raise arguments regarding the list of Nevada statutes that Plaintiffs allege Defendants violated.  Plaintiffs allege Defendants violated over eighty Nevada statutes related to mental health and medical facilities including Nevada Revised Statutes §§ 449.710, 449.720, 449.730, 433.741 through 433.5503, and 433A.155 through 433A.580, but there are no factual allegations supporting a plausible entitlement to relief under each of these statutes.  Even pro se complaints must contain either direct or inferential allegations concerning all of the material elements necessary to sustain recovery under a particular claim.  Spencer v. DHI Mortg. Co., 642 F. Supp. 2d 1153, 1159-60 (E.D. Cal. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 (2007)).  The Court therefore will dismiss Plaintiffs' claims for violation of §§ 449.710, 449.720, 449.730, 433.741 through 433.5503, and 433A.155 through 433A.580 with leave to amend.  Should Plaintiffs decide to amend this claim, the Court advises Plaintiffs that vague and conclusory allegations that Defendants collectively violated a long list of statutes are insufficient to state a claim.  Plaintiffs must allege facts showing how each named Defendant violated each of the statutes.

**E.   Expert Affidavit Requirement**

Summerlin argues that all of Plaintiffs' claims – federal and state – center on allegedly improper medical care provided to Dirks during his involuntary commitment and should be dismissed for failure to attach a medical expert's affidavit pursuant to Nevada Revised Statutes § 41A.071.  Summerlin further argues Plaintiffs are attempting to circumvent Nevada's medical malpractice rules by cloaking their medical malpractice claims as other claims, such as negligence claims.  Defendants cite Szydel v. Markman, 117 P.3d 200 (Nev. 2005), for the proposition that § 41A.071 requires expert affidavits for claims filed in conjunction with medical malpractice claims.  Plaintiffs respond that they

"did not allege medical malpractice as much was involved, however, the time limit for filing had lapsed, the reason a certificate of a physician was not in this pleading." (Pls.' Opp'n at 6.) Apparently, Plaintiffs believe that they may have had medical malpractice claims but that these claims are time-barred, which is why Plaintiffs did not attach an expert's supporting affidavit.

Section 41A.071 requires Nevada state courts to dismiss, without prejudice, medical malpractice claims "if the action is filed without an affidavit, supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice." The expert affidavit requirement does not apply when a medical malpractice action is based only on the res ipsa loquitur doctrine, such as cases where a needle or a sponge is left in a patient during an operation, because it would be unreasonable to force plaintiffs to incur costs to obtain an affidavit when expert testimony would not be necessary to succeed at trial. Szydel, 117 P.3d at 203-04. Contrary to Summerlin's assertion, Szydel does not stand for the proposition that every claim filed in conjunction with a medical malpractice claim must be accompanied with an expert affidavit. Instead, it provides that in cases where res ipsa loquitur claims are filed in conjunction with other medical malpractice claims, expert affidavits are required with respect to the other medical malpractice claims. Id. at 205. Defendants do not provide any other authority explaining why § 41A.071 would apply to non-medical malpractice claims or federal claims, such as Plaintiffs' constitutional claims.

Here, Plaintiffs concede they do not have viable medical malpractice claims, thereby rendering § 41A.071 inapplicable in this case. Further, taking Plaintiffs' allegations and all reasonable inferences therefrom as true, Plaintiffs are alleging claims related to Dirks's involuntary confinement itself, not claims related to the medical care Dirks received while detained. The Court therefore will deny Summerlin's Motion to Dismiss with respect

to the expert affidavit requirement.

**III.      STATE OF NEVADA'S MOTION TO DISMISS (Doc. #14)**

   **A.      Eleventh Amendment**

Defendant State of Nevada moves to dismiss, arguing the Eleventh Amendment bars any claims for damages against it in federal court. Plaintiffs respond that the Eleventh Amendment does not bar suit brought against a state by the state's own citizens. Plaintiffs also argue Nevada waived immunity under Nevada Revised Statutes § 41.031. Finally, Plaintiffs cite to Ex Parte Young regarding injunctive relief.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dep't of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). The Eleventh Amendment "bars a citizen from bringing suit against the citizen's own State in federal court, even though the express terms of the Amendment refer only to suits by citizens of another State." Welch v. Tex. Dep't of Highways & Pub. Transp., 483 U.S. 468, 472 (1987). Pursuant to Nevada Revised Statutes § 41.031(3), the State of Nevada "does not waive its immunity from suit conferred by Amendment XI of the Constitution of the United States."

Defendant State of Nevada is entitled to Eleventh Amendment immunity for any damages claims asserted against it in this action. Plaintiffs' argument that the Eleventh Amendment does not apply to suits brought against Nevada by its own citizens is contrary to controlling law. Plaintiffs' argument that Nevada waived its Eleventh Amendment immunity is contrary to the plain language of § 41.031(3).

In addition to damages, Plaintiffs request injunctive relief in the Amended Complaint. The Eleventh Amendment does not bar suits brought in certain circumstances for injunctive relief against state officers who are acting in violation of federal law. Ex Parte Young, 209 U.S. 123 (1908). Consequently, the Eleventh Amendment defense applies only to Plaintiffs' damages claims, not claims for injunctive relief.

**B.      Failure to State a Claim**

State of Nevada argues that even if Plaintiffs could pursue injunctive relief under Ex Parte Young, Plaintiffs make no factual allegations regarding what federal law was violated by which state official.  State of Nevada argues that the sole factual allegation regarding the State does not put it on notice of any acts or omissions for which it is liable. Plaintiffs respond that the State has allowed violations of law as a general matter, and also that Dirks was committed at Rawson-Neal twice during the relevant time period.[2]

The Amended Complaint mentions Rawson-Neal but does not have any factual allegations regarding what happened in relation to Dirks's stays there or the dates Dirks was a patient at Rawson-Neal.  The Amended Complaint's only allegation regarding the State of Nevada separate and apart from Rawson-Neal is that the "State of Nevada has intentionally and repeatedly failed to take seriously their charge to advocate for those citizens most in need of protection."  (Am. Compl., ¶ 31.)  In addition to requesting damages, which are barred by the Eleventh Amendment, Plaintiffs request the Court "[c]ommand the State of Nevada to forgo political semantics and fund healthcare properly to take seriously their charge to advocate for all citizens who are most in need of protection."  (Id. at 3.)  Plaintiffs also request the Court appoint an ombudsman to advocate a plan and for Defendants to "assist" Plaintiffs in getting amendments to Nevada statutes.  (Id. at 3-4.)

These allegations fail to state a claim.  Injunctive relief is a remedy, and to be entitled to a remedy Plaintiffs must state a claim against the State of Nevada.  State Farm

---

[2]  Nevada Revised Statutes § 41.031(2) requires that actions against the State of Nevada "be brought in the name of the State of Nevada on relation of the particular department, commission, board or other agency of the State whose actions are the basis for the suit."  Section 41.031(2) further requires that the summons and complaint be served on (1) "[t]he Attorney General, or a person designated by the Attorney General, at the Office of the Attorney General in Carson City"; and (2) "[t]he person serving in the office of administrative head of the named agency."  Id.

Here, Plaintiffs have failed to bring the action against the State on relation of Rawson-Neal or another state agency as required by the statute.  Nor have Plaintiffs served the administrative head of any such agency.

Mut. Auto. Ins. Co. v. Jafbros Inc., 860 P.2d 176, 178 (Nev. 1993) (referring to an injunction as a remedy); Cole v. CIT Grp./Consumer Fin., Inc., 2010 WL 5134999, at *1 n.1 (D. Nev. Dec. 9, 2010) (stating that injunctive relief is a remedy, not a cause of action). Injunctive relief is available when a plaintiff is entitled to such a remedy on an independent cause of action.  Id.  The Amended Complaint contains no factual allegations that put the State of Nevada on notice of any acts or omissions for which it is liable.  Moreover, injunctive relief under Ex Parte Young must be directed at a particular federal official who allegedly is acting in violation of federal law.  The Amended Complaint contains no factual allegations from which the State of Nevada could determine which state official allegedly is acting in violation of which federal law.  The Court therefore will dismiss Plaintiffs' claims against the State of Nevada with leave to amend to set forth factual allegations regarding which state official or agency, such as Rawson-Neal, violated which federal law, as well as to set forth factual allegations regarding how the federal law was violated.  Should Plaintiffs choose to amend their claims against State of Nevada, Plaintiffs must name and serve the state agency as set forth in § 41.031(2).

## IV.    PLAINTIFFS' MOTION FOR LEAVE TO AMEND (Doc. #27)

Plaintiffs move to amend their Amended Complaint, arguing the confusion their Amended Complaint has generated illustrates their argument that Nevada's mental health system is in a state of disarray.  Summerlin responds that Plaintiffs' proposed Second Amended Complaint is futile because it could not withstand a motion to dismiss. Summerlin also contends Plaintiffs' proposed amendments only confuse matters further by adding new defendants without providing factual background explaining their involvement. The State of Nevada joins in Summerlin's Opposition.  Plaintiffs respond that they include additional defendants because Valley Health Systems is the parent company of Spring Valley Hospital, Centennial Hills Hospital, Valley Hospital, and Summerlin, and that incidents occurred at these hospitals from April 12, 2010, to April 17, 2012.

Generally, a plaintiff may amend his complaint once "as a matter of course" within twenty-one days of serving it, or within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id.; Foman v. Davis, 371 U.S. 178, 182 (1962). "The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." United States v. Corinthian Colls., 655 F.3d 984, 995 (9th Cir. 2011). A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion for failure to state a claim. Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). It is within the district court's discretion to determine whether to grant leave to amend, and "[a] district court does not err in denying leave to amend where the amendment would be futile." Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009).

Here, there is no indicia of bad faith or undue delay. Plaintiffs previously have amended their Complaint, however, it was before Defendants were served. Thus, the relevant questions are whether amendment would be futile and whether amendment will prejudice Defendants. Although Plaintiffs' proposed Second Amended Complaint includes additional factual allegations, such as the dates of each Defendant's involvement, and attempts to ascribe certain allegations to certain Defendants, the proposed amendment largely repeats the same allegations contained in the operative Amended Complaint. Allowing Plaintiffs to proceed with the proposed Second Amended Complaint would be futile and would result in prejudice to Defendants. The Court therefore will deny Plaintiffs' Motion.

The Court will, however, grant Plaintiffs leave to file a Second Amended Complaint in accordance with the instructions set forth in this Order. If Plaintiffs choose to

file a Second Amended Complaint, Plaintiffs must correct the deficiencies identified in this Order for those claims that can be cured through amendment.  Specifically, to state a claim under 42 U.S.C. § 1983 against American Medical, Plaintiffs must allege facts indicating how American Medical is a state actor if Dirks voluntarily rode in the ambulance to the hospital.  To state Fifth and Eighth Amendment claims, Plaintiffs must allege facts regarding the criminal proceedings or convictions, if any, which Dirks was subjected to related to this case.  To state a Fourth Amendment claim, Plaintiffs must allege facts as to when or where their personal conversations occurred, that the person who eavesdropped was acting as a state actor, and that Plaintiffs had a legitimate expectation of privacy at the time of the conversations.

To state a Fourteenth Amendment claim related to violation of Nevada Revised Statutes § 433A.160, Plaintiffs must allege facts clarifying whether they are challenging Chapter 433A as a whole for failing to provide a mechanism to challenge an involuntary commitment within 72 hours or whether they are alleging a failure to follow the existing statutory requirements in their particular circumstances.  To state a Fourteenth Amendment claim based on deprivation of food, clothing, shelter, medical care, and mental health treatment or based on deprivation of liberty related to the mechanical restraints, Plaintiffs must allege facts supporting these claims.

To state a claim for false imprisonment, Plaintiffs must allege facts indicating Defendants acted with malice or bad faith or that Dirks suffered physical harm due to a Defendant's negligence, if such facts exist.  To state a claim for negligent infliction of emotional distress, Plaintiffs must allege facts supporting the elements of either a direct or bystander claim of negligent infliction of emotional distress.  To state a claim for defamation, Plaintiffs must allege facts identifying who made the allegedly defamatory statements, what the actual statements were, and to whom they were made.  To state a claim for fraud, Plaintiffs must allege facts regarding the time, place, specific content of the

representations, the identities of the parties to the representations, and what is false or misleading about the representations.  If Plaintiffs intend to state a claim for negligence, Plaintiffs must allege facts supporting the elements of a negligence claim and shall not attempt to bring time-barred medical malpractice claims under the guise of a negligence claim.  To state a claim for violation of a particular Nevada statute, Plaintiffs must allege facts showing which Defendant violated which statute and the manner in which the statute was violated.  Vague and conclusory allegations that multiple Defendants collectively violated a long list of statutes are insufficient.

With respect to their claims against State of Nevada, Plaintiffs must allege facts regarding what federal law was violated by which state official and must properly name and serve such state official pursuant to Nevada Revised Statutes § 41.031(2).

For all of the aforementioned claims, Plaintiffs must ascribe particular conduct to particular Defendants rather than referring to Defendants collectively.  Further, Plaintiffs shall not re-assert claims the Court has dismissed with prejudice, which include Plaintiffs' claims for violation of 18 U.S.C. §§ 241, 242, and HIPAA.

Moreover, Plaintiffs shall avoid including claims or requests for relief that are not cognizable in this Court.  Specifically, Plaintiffs shall not request that the Court appoint an ombudsman to advocate for certain groups of citizens, such as the mentally ill population, nor shall Plaintiffs reattach their proposed ombudsman plan.  Further, Plaintiffs shall not request that the Court assist them in obtaining amendments to Nevada statutes or that the Court order the State of Nevada to advocate for a certain group of citizens or to amend its statutes in any particular way.  Such requests are outside the Court's purview and would be more properly addressed to the Nevada Legislature or other regulatory or administrative agencies.

If Plaintiffs choose to file a Second Amended Complaint, Plaintiffs are further advised all Defendants must be identified in the caption of the pleading and that all

Defendants must be named in the section of the Second Amended Complaint designated for that purpose.  Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, Plaintiffs still must give Defendants fair notice of each of the claims Plaintiffs are alleging against each Defendant.  Specifically, Plaintiffs must allege facts showing how each named Defendant is involved and the approximate dates of their involvement.

Furthermore, Plaintiffs are advised that if they file a Second Amended Complaint, the original Complaint (Doc. #1) and Amended Complaint (Doc. #4) no longer serve any function in this case.  As such, if Plaintiffs file a Second Amended Complaint, each claim and the involvement of each Defendant must be alleged sufficiently.  The Court cannot refer to a prior pleading or to other documents to make Plaintiffs' Second Amended Complaint complete.  The Second Amended Complaint must be complete in and of itself without reference to prior pleadings or to other documents.

Given that this is Plaintiffs' third opportunity to amend, failure to comply with this Order will result in the dismissal, with prejudice, of the claims Plaintiffs are permitted to amend.  Consequently, the Court strongly encourages Plaintiffs to obtain counsel to represent them in this case.  If Plaintiffs are unable to obtain private counsel, Plaintiffs may wish to contact an organization such as the  Legal Aid Center of Southern Nevada, the Nevada Disability Advocacy and Law Center, or the American Civil Liberties Union of Nevada.

**V.       PLAINTIFFS' MOTION TO CHALLENGE THE CONSTITUTIONALITY OF NEVADA REVISED STATUTES (Doc. #42)**

Plaintiffs move to challenge the constitutionality of Nevada Revised Statutes Chapter 433, including but not limited to §§ 433A.145, 433A.150, 433A.160, and 433A.170.  Plaintiffs argue these statutes are unconstitutional because "the grievance process is inadequate, time consuming and so costly that people can not afford either financially or emotionally to redress their grievances so, most often they have no choice but

to surrender." (Mot. to Challenge the Constitutionality of Nev. Rev. Stat. (Doc. #42), at 2.) Plaintiffs further argue the statutes are unconstitutional because they set policies that conflict with state and federal statutes; for instance, Chapter 433 has "turned the premise of 'innocent until proven guilty' into 'guilty until such a time as you prove, to a doctor's satisfaction, that you are not.'" (Id. (emphasis omitted).) Finally, Plaintiffs argue the statutes are unconstitutional because they effectively turn mental illness into a crime because people can be detained because they might commit a crime. (Id. at 2-3.)

Summerlin responds that Plaintiffs' Motion should be denied because it focuses on Plaintiffs' perceived shortcomings of Nevada's mental health system instead of providing legal arguments for declaring the statutes unconstitutional. Summerlin further argues that statutes are presumed constitutional, and that Plaintiffs have failed to meet their burden of negating every conceivable basis that may support the statutes' constitutionality. American Medical Response joins in Summerlin's Opposition.

The State of Nevada separately responds that Plaintiffs' Motion does not comply with Federal Rule of Civil Procedure 5.1, which deals with notice and certification of constitutional questions to the appropriate attorney general. The State of Nevada further argues that the statutes in question do not allow mentally ill individuals to be arrested, and that the statutes make no mention of mentally ill individuals committing crimes. Instead, the statutes provide a procedure for mentally ill individuals to be detained in a medical facility for no longer than seventy two hours upon an application for emergency admission by certain qualified individuals, such as physicians. American Medical Response joins in State of Nevada's Opposition.

The statutes Plaintiffs argue are unconstitutional are included in the list of eighty-plus statutes Plaintiffs allege Defendants violated. Beyond Plaintiffs' listing of these statutes in the Amended Complaint, the statutes are not at issue in this case, with the exception of Nevada Revised Statutes § 433A.160, the Legal 2000 statute. Further,

Plaintiffs do not allege in the Amended Complaint that these statutes are unconstitutional. Given the insufficiency of the allegations in Plaintiffs' Amended Complaint with respect to these statutes and the lack of legal arguments in Plaintiffs' Motion, the Court will deny Plaintiffs' Motion.

**VI.     CONCLUSION**

IT IS ORDERED that Defendant Summerlin Hospital Medical Center, LLC's ("Summerlin") Motion to Dismiss Plaintiffs' Amended Complaint (Doc. #8) is hereby DENIED in part and GRANTED part.  The Motion is denied with respect to Plaintiffs' Fourteenth Amendment claim based on Plaintiffs' allegation that Dirks was deprived of his liberty even though he was not a danger to himself or others.  The Motion is granted in all other respects.

IT IS FURTHER ORDERED that Defendant American Medical Response, Inc.'s Joinder to Defendant Summerlin Hospital Medical Center, LLC's Motion to Dismiss (Doc. #12) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant State of Nevada's Motion to Dismiss (Doc. #14) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant American Medical Response, Inc.'s Joinder to Defendant State of Nevada's Motion to Dismiss (Doc. #17) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiffs Dewey Dirks and Elaine Cunningham-Dirks's Motion for Leave of Court (Doc. #27) is hereby DENIED.  Plaintiffs Dewey Dirks and Elaine Cunningham-Dirks shall have thirty (30) days from the date of this Order to file a Second Amended Complaint if they believe they can correct the noted deficiencies.  Failure to comply with this Order will result in dismissal, with prejudice, of the claims Plaintiffs are permitted to amend.

IT IS FURTHER ORDERED that Plaintiffs Dewey Dirks and Elaine

1  Cunningham-Dirks's Motion to Challenge the Constitutionality of Nevada Revised Statutes

2  (Doc. #42) is hereby DENIED.

3

4  DATED: January 2, 2013

5

6  _____
   PHILIP M. PRO

7  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26